

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/18/2013

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| WILLIAM C. RITCHEY AND | § | Case No. 10-36149 |
| DONNA M. RITCHEY, | § | |
| | § | Chapter 7 |
| Debtors. | § | |
| | § | |

## MEMORANDUM OPINION ON DEBTORS' MOTION TO
## REOPEN THEIR CHAPTER 7 CASE
[Docket No. 20]

### I. INTRODUCTION

The Court writes this Memorandum Opinion to clarify the current state of the law concerning a creditor's right to sue on an unscheduled debt after the debtor has received a discharge. The right to do so is not nearly as broad as a creditor, and its counsel, might think. Indeed, the post-discharge right to sue to recover an unscheduled, pre-petition debt is sufficiently narrow that it can be a painful trap for the unwary creditor. Such is the case here.

In 2009, William Ritchey contracted with Ductwork, Inc. (the Creditor) for custom duct work and signed a promissory note in the amount of $24,947.00. [Debtors' Ex. 1 at 7–8]. Mr. Ritchey and his wife, Donna Ritchey (the Debtors), filed for Chapter 7 on July 23, 2010. [Doc. No. 1]. On October 26, 2010, the Debtors received a discharge of their debts [Doc. No. 15], and the case was closed [Doc. No. 16]. The Debtors did not own any non-exempt assets, and the Chapter 7 trustee (the Trustee) made no distributions to creditors. The Creditor's claim was not listed in the Debtors' Schedules, nor was the Creditor listed on the Creditors' Matrix. *See* [Doc. No. 1 at 17–28, 51–58].

1

On March 12, 2013—which was two and a half years after this Court discharged the Debtors—the Creditor filed a lawsuit in Texas state court seeking repayment of the unscheduled debt. [Debtors' Ex. 1]. In the pleadings filed in state court, the Creditor alleged that because the debt was unscheduled and the Creditor did not learn of the bankruptcy until after the case was closed, the Creditor was unable to file a timely proof of claim and should therefore be able to sue and recover on the debt. [*Id.* at 4–5]. In response, the Debtors moved to reopen their Chapter 7 case, pursuant to 11 U.S.C. § 350(b)[1], in this Court so that: (1) they may remove the state court suit to this Court in order to request dismissal of the suit; and (2) recover their attorneys' fees and costs for having to defend against the state court suit.

The Court now makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party. For the reasons set forth herein, the Court will grant the Motion to Reopen.

## II. FINDINGS OF FACT

1. On July 10, 2009, Mr. Ritchey signed a promissory note (the Debt) wherein he promised to pay $24,947.00 to the Creditor, payable in equal monthly installments until the balance, inclusive of interest and fees, was paid in full. [Doc. No. 28 at 1]; [Doc. No. 28 Ex. 1 at 3, 7–8]; [Debtors' Ex. 1 at 3, 7–8].

2. On July 23, 2010, the Debtors filed a Chapter 7 petition. [Doc. No. 1].

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section refers to a section in 11 U.S.C., which is the United States Bankruptcy Code.

3.  The Debtors failed to list the Creditor and the Debt on their Schedule F or on their Creditors' Matrix. *See* [Doc. No. 1 at 20–28, 51–58]. The Creditor therefore did not receive notice of the Debtors' Chapter 7 case.

4.  On July 26, 2010, the Clerk of the Court sent out the *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines* (the Notice), stating, "Please Do Not File a Proof of Claim Unless You Receive a Notice To Do So." [Doc. No. 8 at 1]; *see also* Official Bankr. Form 9A at 1. The reverse side of the Notice explained that the request not to file a proof of claim at this time indicated that there did not appear to be any assets in the Debtors' case with which to pay creditors. [Doc. No. 8 at 2]; *see also* Official Bankr. Form 9A at 2.

5.  On August 25, 2010, the § 341 meeting of creditors was held. [*Id.* at 1]. Because the Creditor did not receive the Notice of the filing of the Debtors' Chapter 7 case, the Creditor did not know that the meeting of creditors was scheduled, and therefore did not attend and participate at this meeting.

6.  On October 26, 2010, this Court issued an order discharging the Debtors of their pre-petition debts (the Discharge Order). [Doc. No. 15]. On this same day, the case was closed. [Doc. No. 16].

7.  On March 12, 2013—almost two and a half years after the Debtors received their discharge—the Creditor filed an original petition (the State Court Petition) in the Harris County Civil Court of Law No. 4 against Mr. Ritchey seeking repayment of the Debt. [Debtors' Ex. 1 at 1, 5–6]. The state court suit is styled *Ductwork, Inc. v. Bill Ritchey*, Docket No. 1028972 (the State Court Lawsuit). [*Id.* at 1].

8. In the State Court Petition, the Creditor references the Debtors' bankruptcy discharge on October 26, 2010, as a possible defense to the State Court Lawsuit. [*Id.* at 4–5]. The State Court Petition asserts that the Creditor first became aware of the Debtors' Chapter 7 case when it was raised as a defense to a collection effort approximately one month after the Debtors received their discharge. [*Id.* at 5]. Thus, by its own admission, the Creditor was aware of the Debtors' Chapter 7 case, and the Discharge Order, prior to the filing of the State Court Petition on March 12, 2013.

9. The Creditor also alleges in the State Court Petition that the Debt was not discharged in the Chapter 7 case because it was unscheduled. [*Id.* at 4]. Further, the Creditor alleges that the Debtors' failure to schedule the Debt was due to intentional design, fraud, or improper motive, and not inadvertence or negligence. [*Id.* at 5].

10. On April 17, 2013, the Debtors moved to reopen their Chapter 7 case (the Motion to Reopen) to permit removal of the State Court Lawsuit to this Court [Doc. No. 20 at 2, ¶¶ 1, 11]; [Doc. No. 22 at 2, ¶ 5]; [Doc. No. 28 at 2, ¶ 7], and to allow the Debtors to seek recovery of their fees and costs for defending against the Creditor's claim in the State Court Lawsuit [Doc. No. 22 at 2, ¶ 5]; [Doc. No. 28 at 2, ¶ 7; 5, ¶ 17; 7, ¶ 26; 8, ¶¶ 27–28]; [Doc. No. 29 at 4, ¶¶ 14–15].

11. On May 2, 2013, this Court conducted a hearing on the Debtors' Motion to Reopen during which Mr. Ritchey testified that he had intended to list the Debt on the Schedules and that "for some reason [it] just did not get listed." [Tape Recording, May 2, 2013 Hearing at 12:02:26–12:02:39 p.m.]. He also testified that the Creditor first knew of the Chapter 7 case prior to the date of the entry of the Discharge Order on the docket. [Tape Recording, May 2, 2013 Hearing at 12:03:31–12:04:20 p.m.]. Given that this Court finds

       Mr. Ritchey's testimony to be credible, and given that the Creditor had the opportunity to adduce testimony to impeach Mr. Ritchey's credibility, but chose not to do so, the Court finds that the Creditor knew of the Debtors' Chapter 7 case before the Discharge Order was entered.

12. Additionally, at the hearing on May 2, 2013, Ms. Ritchey credibly testified that her husband and she intended to schedule the Debt, and that they thought they had done so. [Tape Recording, May 2, 2013 Hearing at 12:12:09–12:12:20 p.m.].

13. The Creditor's counsel chose not to cross-examine the Debtors at the May 2, 2013, hearing. He asked, however, for the opportunity to call witnesses to dispute the testimony of the Debtors. [Tape Recording, May 2, 2013 Hearing at 12:07:06–12:07:38 p.m.]. The Creditor's counsel did not bring any witnesses with him to this hearing, and therefore he asked for a continuance. Although the Court had scheduled the hearing on the Motion to Reopen for May 2, 2013, and expected both parties to put on their respective cases-in-chief at this time, the Court—to ensure that the Creditor unquestionably received due process—granted this request and continued the hearing to May 28, 2013, to hear the Creditor's witnesses. [Tape Recording, May 2, 2013 Hearing at 12:10:35–12:10:43 p.m. and 12:13:23–12:13:35 p.m.].

14. On May 28, 2013, at the continued hearing, this Court expected to hear testimony from the Creditor's witnesses. However, counsel for the Creditor brought no witnesses with him. Rather, instead of adducing testimony from any witnesses, the Creditor's counsel simply read a statement into the record that his client was prepared to dismiss the State Court Lawsuit and therefore there was no need to reopen the Chapter 7 case. [Tape Recording, May 28, 2013 Hearing at 10:41:55–10:41:60 a.m. and 10:42:44–10:42:49

a.m.]. Thus, the Creditor adduced no testimony to dispute the previous testimony of the Debtors at the hearing held on May 2, 2013. *See* [Tape Recording, May 28, 2013 Hearing at 9:35:47–10:48:44 a.m.]. After the Creditor's counsel made his statement and requested that the Court deny the Motion to Reopen, counsel for the Debtors argued that: (1) contrary to the argument of Creditor's counsel, the mere fact that the Creditor had suddenly decided to dismiss the State Court Lawsuit was not a sound basis for denying the Motion to Reopen; (2) the Motion to Reopen needed to be granted so that the Debtors could vindicate their rights under the Discharge Order, including recovering their attorneys' fees and expenses for having to defend against a suit that never should have been filed; and (3) the Debtors' uncontroverted testimony and exhibits satisfied their burden with respect to the Motion to Reopen. [Tape Recording, May 28, 2013 Hearing at 10:44:04–10:45:00 a.m.]. At the close of the hearing, the Court took the matter under advisement.

### III. CREDIBILITY OF WITNESSES

Two witnesses testified at the May 2, 2013, hearing: (1) Mr. William Ritchey, and (2) Ms. Donna Ritchey. *See* [Finding of Fact No. 11, 12]. The Court finds both of them to be credible witnesses and gives substantial weight to their testimony.

### IV. CONCLUSIONS OF LAW

**A.** **Jurisdiction, venue, and constitutional authority to enter a final order**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because it pertains to a determination as to the dischargeability of a particular debt; and it is also core pursuant to 28 U.S.C. § 157(b)(2)(O) because it affects the relationship between the Debtors

and the Creditor; and it is also core pursuant to the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance."). Here, the substantive right at issue is whether the Discharge Order encompasses the unscheduled Debt and therefore bars the Creditor from suing to recover the Debt. Venue is proper pursuant to 28 U.S.C. § 1408(1).

For the purposes of ruling on the Motion to Reopen, this Court concludes that the issue of the constitutional authority of a bankruptcy court to enter a final order, as articulated in *Stern v. Marshall*, is not yet a concern. 131 S. Ct. 2594 (2011). The Motion to Reopen does not entail a final order, so *Stern* does not apply. *See Truong v. Kartzman*, 513 F.3d 91, 93 (3d Cir. 2008) (stating that "an order in an individual adversary proceeding is not final unless it ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment."). Here, all that is being requested is for this Court to reopen this Chapter 7 case. The litigation between the Debtors and the Creditor will certainly not be over. Indeed, it will just be beginning in this Court.

In the alternative, even if ruling on the Motion to Reopen does entail a final order, this Court concludes that it has the constitutional authority to enter a final order. The facts in the case at bar are entirely distinguishable from the facts in *Stern*. In *Stern*, the debtor filed a counter-claim based solely on state law, and the resolution of this counter-claim would not

necessarily lead to a determination of the validity or invalidity of the claim filed by the defendant against the debtor's estate. Here, there are express Code provisions involved: § 350(b), § 524(a), and § 727(b). There is no state law involved. Accordingly, this Court concludes that it does have the constitutional authority to enter a final order on the Motion to Reopen.

**B.    This Court may reopen the bankruptcy case to accord relief to the Debtors**

This Court has the authority to reopen a bankruptcy case under § 350(b) " to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The decision to reopen a bankruptcy case is committed to the sound discretion of the bankruptcy court. *See e.g., Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1018 (5th Cir. 1991) (finding broad discretion in the phrase "for other cause"). If there is a reasonable chance that the Debtors are entitled to relief, then this Court may reopen their bankruptcy case to determine the nature and amount of relief to accord.

**C.    The Debtors are entitled to relief, and their Chapter 7 case should therefore be reopened for further proceedings**

This Court granted the Debtors a discharge on October 26, 2010, pursuant to §§ 727(a) and (b). Thus, in the Debtors' view, the Discharge Order precludes the Creditor from filing the State Court Petition and prosecuting the State Court Lawsuit. Because the Creditor has taken these actions, the Debtors contend that the Creditor has violated the discharge injunction. [Doc. No. 22 at 2, ¶ 5]. As a result, they ask this Court to reopen their Chapter 7 case so that they may remove the State Court Lawsuit to this Court and request dismissal thereof, as well as pursue the recovery of costs, fees, sanctions, or other justified relief from the Creditor and his agents. [Finding of Fact No. 10]. If the Creditor violated the discharge injunction, then the Debtors are entitled to the opportunity to seek both forms of relief. *See McClure v. Bank of Am. (In re*

*McClure*), 420 B.R. 655 (Bankr. N.D. Tex. 2009) (finding that compensatory damages and sanctions may be awarded for willful violations of the discharge injunction). Thus, whether this Court should reopen the Debtors' Chapter 7 case to consider granting relief hinges on whether the Creditor violated the discharge injunction.

1. Effect of Discharge under 11 U.S.C. § 524(a)(2)

Once a debtor receives a discharge under § 727, a discharge injunction takes effect under § 524(a)(2). Specifically, this provision provides that any discharge under Title 11 "operates as an injunction against the commencement or continuation of an action . . . to collect any such debt as a personal liability of the debtor." A creditor willfully violates the discharge injunction if it (1) knows of the injunction; and (2) intentionally commits an act that violates the injunction.[2] *In re Sandburg Financial Corp.*, 446 B.R. 793, 803 (S.D. Tex. 2011). Here, the Creditor knew that the discharge injunction was in place because in the State Court Petition, it cited the injunction as a possible defense by the Debtors to the State Court Lawsuit. [Finding of Fact No. 8]. Thus, the first element is satisfied. The question now is whether the second element is also met. The act of filing the State Court Petition is evidence enough of the intent to collect the Debt. The issue of whether the second element is met turns on whether the Creditor violated the discharge injunction by actually filing the State Court Petition and prosecuting the State Court Lawsuit. Stated differently, the issue is this: does the Discharge Order encompass the Debt? If it does, then seeking to collect the Debt is a violation of the discharge injunction; if it does not, then seeking to collect the Debt is not a violation of the injunction.

---

[2] It is only necessary that the action itself be intentional, rather than that the violation of the injunction be intentional. *In re Sandburg Financial Corp.*, 446 B.R. 793, 803 (S.D. Tex. 2011).

The Creditor argues that because the Debt was not scheduled, the Creditor was not able to timely file a proof of claim, and that the Debt was therefore not discharged. [Debtors' Ex. 1 at 3–4]. The Debtors argue that their failure to schedule the Debt does *not* mean that the Debt falls outside of the Discharge Order. [Doc. No. 28]. Confusion over the discharge status of unscheduled debts continues to give rise to lawsuits in this District. *See e.g. Lopez v. Flores (In re Lopez)*, No. 03-70900, 2012 WL 3499444 (Bankr. S.D. Tex. Aug. 13, 2012) (denying a motion for summary judgment for failure to prove a lack of genuine dispute as to the applicability of a § 523(a)(3) exception). Therefore, this Court finds it necessary to discuss the current state of the law in the Fifth Circuit regarding Chapter 7 discharges and unscheduled debts.[3]

*(a) Discharges of unscheduled debts in Chapter 7 cases*

A Chapter 7 discharge grants a debtor a discharge under § 727. Section 727(b) declares that: "[e]xcept as provided in section 523 of this title, a discharge under [§ 727(a)] discharges the debtor from *all debts* that arose before the date of the order for relief . . . whether or not a proof of claim based on any such debt or liability is filed." (emphasis added). Thus, unless excepted by § 523, a creditor's pre-petition claim is discharged. *E.g., In re Guzman*, 130 B.R. 489, 490–91 (Bankr. W.D. Tex. 1991) (finding that § 727 discharges all pre-petition debts, but that creditors may attempt to prove an exception under § 523).

---

[3] See *Stone v. Caplan (In re Stone)*, 10 F.3d 285 (5th Cir. 1994), for an in-depth analysis of the evolution of the treatment of unscheduled debts under § 523(a)(3) in the Fifth Circuit. See also Lauren A. Helbling & Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion over Reopening Cases and Amending Schedules to Add Omitted Debts*, 69 Am. Bankr. L.J. 33 (1995), for an overview of the approaches within the Circuit Courts of Appeals and the general issue of omitted debts in discharges.

Section 523(a)(3) excepts unscheduled debts from discharge under certain circumstances.[4] The Fifth Circuit analyzes § 523(a)(3) exceptions using three factors, originally described in *Robinson v. Mann*, 339 F.2d 547 (5th Cir. 1964): (1) the reasons the debtor failed to list the debt; (2) the amount of administrative disruption to the bankruptcy process; and (3) the prejudice suffered by all of the creditors. *E.g.*, *Faden v. Ins. Co. of N. Am.* (*In re Faden*), 96 F.3d 792, 796 (5th Cir. 1996) (citing *Stone v. Caplan* (*In re Stone*), 10 F.3d 285, 290 (5th Cir. 1994)).

In Chapter 7 cases—like the one in the case at bar—where the Clerk of the Court issues a no-asset notice as part of the notice of the meeting of creditors, the creditors are not required to file proofs of claim; indeed, the notice actually requests them *not* to file claims unless subsequently instructed to do so. Fed. R. Bankr. P. 2002(e). The period to timely file a proof of claim does not begin to run unless, and until, assets are subsequently found and the Clerk of the Court then notifies the creditors to file their claims. *See Stone*, 10 F.3d at 289–292. So, as long as a creditor holding a debt subject to § 523(a)(3)(A) learns of the bankruptcy before assets are discovered—an indefinite period in cases where assets are never found—it is able to submit a timely claim if ever required; thus, no prejudice occurs to this creditor. *Id.* at 291 ("Creditors are prejudiced only if their rights to receive their share of dividends and obtain dischargeability determinations are compromised."). Thus, with respect to the second and third factors of the *Robinson* test, the failure to schedule a debt in a no-asset case does not disrupt the bankruptcy process or prejudice any of the creditors. *See id.* at 291–92.

---

[4] The Court notes that some debts are not discharged when a creditor prosecutes an adversary proceeding under 11 U.S.C. § 523(a)(2), (a)(4), or (a)(6). These are instances where the debts arose due to pre-petition fraud, or willful and malicious conduct committed by the debtor. In the case at bar, the Creditor, in the State Court Petition, made no allegation that the Debt arose due to any fraud or misconduct by the Debtors. Rather, the Debt here is simply an obligation that arose through a contractual agreement (i.e., the promissory note executed by Mr. Ritchey) under which Mr. Ritchey defaulted.

The deciding factor in the analysis, then, is the first factor, i.e. the reason that the debtor failed to schedule the debt. If the failure to list the pre-petition debt was inadvertent or negligent, then equity favors finding the debt discharged as of the date the order of discharge was entered. *Faden*, 96 F.3d at 796 (citing *Stone*, 10 F.3d at 291). Conversely, "a court should not discharge a debt . . . if the debtor's failure to schedule that debt was due to intentional design, fraud, or improper motive." *Id.* "The burden is on the debtor . . . to show the absence of fraud or intentional design." *Id.* (citing *Rion v. Spivey* (*In re Springer*), 127 B.R. 702, 708 (Bankr. M.D. Fla. 1991)).

In summary, a Chapter 7 discharge grants debtors a discharge of *all* of their debts—scheduled *and* unscheduled—unless excepted by § 523. Section 523(a)(3) allows an exception to the discharge for unscheduled debts, but in the Fifth Circuit, the *Robinson* test is used to determine if this exception applies. Under this test, a debt in a no-asset case that is unscheduled due to inadvertence or negligence is not excepted from the discharge; rather the unscheduled debt is discharged along with the scheduled debts. The debt is only excepted from discharge if the debtor's failure to schedule the debt was due to intentional design, fraud, or improper motive. Therefore, following entry of a discharge order in a no-asset case, any attempt to recover an unscheduled pre-petition debt stands the risk of running afoul of the discharge injunction; the court must make a finding that the debtor's failure to schedule the debt was due to skullduggery; otherwise, the creditor will very likely be in violation of the discharge order.

2. <u>The Debtors have carried their burden to show that their failure to schedule the Debt was inadvertent, and the Creditor has failed to introduce any evidence to controvert the Debtors' testimony</u>

In the State Court Petition, the Creditor asserts a discharge exception under § 523(a)(3) and alleges that the Debtors failed to list the Debt due to intentional design, fraud, and improper

motive. [Finding of Fact No. 9]. However, the Creditor has not produced any evidence to support that allegation. The Creditor did not cross-examine the Debtors at the hearing on May 2 when they testified that they inadvertently failed to schedule the Debt. [Finding of Fact No. 13]. Despite the Court granting the Creditor's request for a continuance so that the Creditor could adduce testimony from its own witnesses, the Creditor also failed to produce witnesses at the May 28 hearing to dispute the testimony that the Debtors gave at the May 2 hearing. [Finding of Fact No. 14].

The focus of the May 2 and May 28 hearings was the issue of whether to reopen the Debtors' Chapter 7 case. [Finding of Fact No. 11, 13]. The question of why the Debtors failed to schedule the Debt is certainly germane to that decision. If there is a genuine dispute as to why the Debtors failed to list the Debt, then the state court is an acceptable forum in which to seek a declaratory judgment. *See Lopez*, 2012 WL 3499444, at *4 (finding that state courts have concurrent jurisdiction to decide § 523(a)(3) exceptions); *Eastman v. Baker Recovery Services (In re Eastman)*, No. 08-05055, 2009 Bankr. LEXIS 4352, at *26 (Bankr. W.D. Tex. Apr. 17, 2009) (finding that attempts to collect excepted debts do not violate the injunction if the creditor asserts the exception). However, if the allegation of intentional design, fraud, or improper motive is merely a veil to cover an impermissible attempt to collect a discharged debt, then the interests of the bankruptcy system demand that this Court reopen the case and allow the Debtors to seek relief.[5]

---

[5] Policy considerations demand that the Court vigorously defend the discharge injunction to safeguard a debtor's "fresh start." *See In re McClure*, 420 B.R. at 663, 665 ("To protect its own authority as well as to give debtors the relief Congress intended, a bankruptcy court must act promptly and firmly to [uphold the discharge injunction]."); *In re Herrera*, 380 B.R. 446, 454 (Bankr. W.D. Tex. 2007) (favorably citing *In re Latanowich*, 207 B.R. 326, 334 (Bankr. D. Mass. 1997) (noting that one of the purposes for imposing a permanent injunction along with the discharge order is "to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it") (citations omitted)).

13

Here, the Debtors gave credible testimony on May 2 that their failure to schedule the Debt was due to inadvertence. [Finding of Fact No. 11, 12]. Yet, despite being given ample time and opportunity to rebut this testimony, the Creditor failed to do so. [Finding of Fact No. 13, 14]. Thus, given the record, this Court finds that the Debtors' failure to schedule the Debt was inadvertent or, at worst, negligent. Given this finding, it necessarily follows that this Court must conclude that the Debt was discharged as of October 26, 2010 (i.e. the date of the Discharge Order). *See Faden*, 96 F.3d at 796. And, given this conclusion, it necessarily follows that the Creditor's prosecution of the State Court Lawsuit constitutes a violation of the Discharge Order in the Debtors' case. Accordingly, under 11 U.S.C. § 350(b), the Debtors have proven that cause exists to reopen their case so that they may seek relief—namely, to remove the State Court Lawsuit to this Court to ensure that it is dismissed with prejudice and to file the appropriate pleading seeking to recover attorneys' fees and costs for having to defend against the lawsuit.

### V. Conclusion

This is a no-asset case [Finding of Fact No. 4], where the Debtors failed to list the Debt on their schedules [Finding of Fact No. 3]. The Creditor claims an exception from discharge for the unlisted Debt [Finding of Fact No. 9], an issue governed by § 523(a)(3) and the *Robinson* test. The Creditor is not prejudiced because no dividend was paid, and the administration of the bankruptcy system is not disturbed by the omission. The sole issue in dispute is the Debtors' intent in omitting the Debt. The Debtors, in their case in chief, have met their burden in showing that the omission was inadvertent; the Creditor has presented no evidence to advance its assertion of mal-intent on the part of the Debtors. Therefore, pursuant to the *Robinson* test, the Debt was discharged. And, because the Debt was discharged, the Creditor's filing of the State Court Petition and the prosecution of the State Court Lawsuit provide a sound basis for reopening the

Debtors' Chapter 7 case because § 350(b) provides for a reopening of a case "to accord relief to the debtor or for other cause"—and here, the relief is the dismissal with prejudice of the State Court Lawsuit and the recovery of the Debtors' attorneys' fees and costs for having to defend against the lawsuit. The bankruptcy case will therefore be reopened. The Debtors may then proceed to remove the State Court Lawsuit—if the Creditor has not already dismissed it—and also seek their reasonable attorneys' fees and costs from the Creditor for violation of the Discharge Order.

An order granting the Debtors' Motion to Reopen will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 18th day of June, 2013.

_____
Jeff Bohm
Chief United States Bankruptcy Judge