

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**06/24/2014**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **William C. Ritchey** | § | **Case No. 10-36149** |
| **Donna M. Ritchey** | § | |
| | § | **Chapter 7** |
| **Debtors.** | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE DEBTORS' MOTION FOR CONTEMPT AND SANCTIONS AGAINST DUCTWORKS, INC.[1] AND PATRICK DOZARK FOR VIOLATION OF THE DISCHARGE INJUNCTION FOR COLLECTION OF DEBT
[Doc. No. 34]

### I. INTRODUCTION

On October 3, 2013, William C. Ritchey and Donna M. Ritchey (the Debtors) filed their

Motion for Contempt and Sanctions Against Ductworks, Inc. and Patrick Dozark for Violation of

the Discharge Injunction for Collection of Debt (the Sanctions Motion).[2]   [Doc. No. 34].   On

October 24, 2013, Ductwork, Inc. (Ductwork) filed a response opposing the Sanctions Motion.

[Doc. No. 36].   On November 19, 2013, January 28, 2014, January 30, 2014, and February 4,

2014, the Court held hearings on the Sanctions Motion during which testimony was adduced and

exhibits were introduced.   At the close of the hearing, the Court took the matter under

advisement.   On March 16, 2014, Ductwork filed a Bibliography of Legal Authorities.   [Doc.

No. 54].   On April 15, 2014, the Debtors filed a Response and Brief on Case Issues.   [Doc. No.

55].

---

[1] In the title of this motion, the Debtors incorrectly named Ductwork, Inc. as "Ductworks, Inc.," but the correct name of the entity is "Ductwork, Inc."

[2] For the reasons stated on the record at a hearing held on November 19, 2013, the Debtors chose not to go forward with the Sanctions Motion as to Patrick Dozark. Thus, the relief they now seek is only against Ductwork, Inc.

The Court now makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated into by Federal Rules of Bankruptcy Procedure 7052 and 9014.[3]   To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.  The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.  For the reasons set forth herein, the Court grants in part and denies in part the Sanctions Motion.

## II. FINDINGS OF FACT

The relevant facts—as established by the pleadings, admitted exhibits, testimony of the witnesses, and stipulations of the parties—are as follows:

1.   On July 10, 2009, William C. Ritchey (Mr. Ritchey)—one of the Debtors in this Chapter 7 case—signed a promissory note wherein he promised to pay $24,947.00 to Ductwork, payable in equal monthly installments until the balance, inclusive of interest and fees, was paid in full (the Note). [Ductwork's Ex. No. 3; Doc. No. 34, p. 2, ¶ 7; Doc. No. 36, p. 4, ¶ 14].

2.   Mr. Ritchey defaulted on the Note prior to July 23, 2010. [Doc. No. 34, p. 2, ¶ 8; Doc. No. 36, p. 4, ¶ 15].

3.   On July 23, 2010, the Debtors filed a Chapter 7 petition. [Doc. No. 1].

4.   The Debtors failed to list Ductwork on their List of Creditors, and they also failed to list Ductwork and the Note on their Schedule F.  [Doc. No. 1, pp. 20–28 & 51–58]. Therefore, Ductwork did not receive notice of the Debtors' case at this time.

---

[3] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.  Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

5. On October 26, 2010, this Court issued an Order granting the Debtors a discharge (the Discharge Order). [Doc. No. 15]. On this same day, the case was closed. [Doc. No. 16].

6. On March 12, 2013—almost two and a half years after the Debtors received their discharge—counsel for Ductwork, Patrick F. Dozark (Dozark), filed an original petition on Ductwork's behalf in the Harris County Civil Court of Law No. 4 against Mr. Ritchey to recover the amount owed under the Note (the State Court Petition). This suit was assigned Cause No. 1028972 (the State Court Lawsuit). [Debtors' Ex. No. 1; Ductwork's Ex. No. 6].

7. In the State Court Petition, Dozark, as counsel for Ductwork, referenced the Debtors' bankruptcy discharge on October 26, 2010, as a possible defense to the State Court Lawsuit. [Debtors' Ex. No. 1, p. 3; Ductwork's Ex. No. 6, p. 3]. Further, Grady Gordon Nixon (Nixon), the owner of Ductwork, knew about the Debtors' bankruptcy case by November of 2010. [January 28, 2014 Tr. 68:4–8]. Indeed, Dozark had provided Nixon with a copy of the Discharge Order. [*Id.* at 70:10–11]. Dozark informed Nixon that Ductwork could file the State Court Lawsuit to collect the Note because the Debtors had not scheduled either the Note or Ductwork in their bankruptcy; and Nixon relied upon Dozark's advice.[4] [*Id.* at 69:23–70:3; February 4, 2014 Tr. 14:2–6].

8. Therefore, by its own admission, Ductwork was aware of the Debtors' Chapter 7 case, and the Discharge Order, prior to the filing of the State Court Petition on March 12, 2013. [January 28, 2014 Tr. 71:3–7].

9. Ductwork also alleged in the State Court Petition that the Note was not discharged in the Debtors' Chapter 7 case because it was unscheduled, and that the Debtors' failure to

---

[4] As discussed in the Conclusions of Law section, Dozark's understanding of the law was incorrect: Ductwork did not have the right to sue the Debtors despite their having failed to schedule the Note and Ductwork in their bankruptcy.

schedule the Note was due to intentional design, fraud, or improper motive, and not inadvertence or negligence. [Debtors' Ex. No. 1, p. 4; Ductwork's Ex. No. 6, p. 4].

10. The Debtors did not file an answer in the State Court Lawsuit. [January 28, 2014 Tr. 42:16–18].

11. On April 5, 2013, the Debtors retained Baker & Associates (the Baker Firm) and paid the Baker Firm a $1,250.00 retainer. [January 28, 2014 Tr. 9:23–10:1; Debtors' Ex. No. 11].

12. On April 17, 2013, the Debtors moved to reopen their Chapter 7 case (the Motion to Reopen) to permit removal of the State Court Lawsuit to this Court, and to allow the Debtors to seek recovery of their reasonable attorneys' fees and costs from Ductwork for its violation of the Discharge Order. [Doc. No. 20].

13. On April 25, 2013, the Debtors filed an Emergency Motion for Hearing Regarding Debtors' Motion to Reopen (the Motion for Hearing). [Doc. No. 22]. On April 29, 2013, this Court granted the Motion for Hearing. [Doc. No. 24].

14. On May 2, 2013, this Court held a hearing on the Motion to Reopen. The Debtors and their attorney, Reese Baker (Mr. Baker), appeared, and both of the Debtors gave testimony in support of the Motion to Reopen. William Weber, an attorney in Houston, made a limited appearance on behalf of Ductwork. Further, Dozark appeared on behalf of Ductwork. Neither Mr. Weber nor Dozark called any witnesses or introduced any exhibits on behalf of Ductwork at this hearing. After both parties rested, this Court continued the hearing to May 28, 2013 so that each counsel could have time to prepare for closing arguments.

4

15. On May 24, 2013, the Debtors filed a Brief in Support of the Motion to Reopen (the Brief). [Doc. No. 28]. On May 28, 2013, the Debtors filed a Supplement to the Brief (the Supplement). [Doc. No. 29].

16. On May 28, 2013, Mr. Baker and Dozark appeared in court to make closing arguments on the Motion to Reopen.[5] The Court then took the matter under advisement, and on June 18, 2013, issued a Memorandum Opinion on the Motion to Reopen [Doc. No. 30], and an Order Granting the Motion to Reopen [Doc. No. 31]. The Memorandum Opinion expressly set forth that because the Debtors had met their burden in showing that their failure to list Ductwork on their Schedules was inadvertent, and because Ductwork "presented no evidence to advance its assertion of mal-intent on the part of the Debtors," the Note was discharged. [Doc. No. 30, p. 14]. Ductwork did not appeal the Order Granting the Motion to Reopen.

17. On June 26, 2013, Dozark filed a Motion for Non-Suit with Prejudice in the Harris County Civil Court [Ductwork's Ex. No. 7, pp. 3–5], and the State Court Lawsuit was dismissed on July 1, 2013. [*Id.* at p. 6; Ductwork's Ex. No. 8; Doc. No. 34, p. 3, ¶ 14; Doc. No. 36, p. 4, ¶ 21].

18. On August 14, 2013, Patrick J. Gilpin, Jr. (Gilpin), one of the attorneys representing the Debtors, sent a letter to Ductwork and Dozark offering a settlement. [Debtors' Ex. No. 10]. Even though Dozark had non-suited the State Court Lawsuit, he did not do so until July 1, 2013, and the Debtors had spent substantial time and attorneys' fees up to that point fending off Dozark's attempts on behalf of Ductwork to collect the balance owed under the Note. In his letter, Gilpin stated that the Debtors had authorized the Baker Firm

---

[5] William Weber, the attorney who appeared with Dozark on behalf of Ductwork at the May 2, 2013 hearing, did not appear at the May 28, 2013 hearing. Rather, Dozark appeared alone and made the closing arguments on behalf of Ductwork.

to file the Sanctions Motion, but that the Debtors were willing to resolve the matter without filing the Sanctions Motion if Ductwork and Dozark accepted the settlement offer. [*Id.*]. Gilpin's letter expressly set forth that the offer would expire on Friday, August 16, 2013, at 5:00 p.m. [*Id.*]. Counsel for the Debtors never received a response from Ductwork or Dozark either accepting the settlement offer or making a counter-offer. [Doc. No. 34, p. 3, ¶ 15].

19. On October 3, 2013, the Debtors filed the Sanctions Motion. [Doc. No. 34]. In the Sanctions Motion, the Debtors request actual damages, injunctive relief, punitive sanctions, and attorneys' fees and costs for Ductwork's violation of the Discharge Order. [*Id.* at pp. 4–5, ¶ 26].

20. On October 24, 2013, Ductwork filed a response opposing the Sanctions Motion. [Doc. No. 36].

21. The Court held a multi-day hearing on the Sanctions Motion on November 19, 2013, January 28, 2014, January 30, 2014, and February 4, 2014.

22. At the hearing on the Sanctions Motion, the Baker Firm submitted an exhibit containing an invoice totaling $21,684.34 (the Baker Firm's Invoice). [Debtors' Ex. No. 6]. The Court admitted this exhibit, and Mr. Baker testified about the services rendered by the Baker Firm on behalf of the Debtors in prosecuting the Motion to Reopen and the Sanctions Motion. Additionally, Mr. Ritchey testified about the damages that his wife and he have incurred as a result of Ductwork's prosecuting the State Court Lawsuit and as a result of the Baker Firm's having to prosecute the Motion to Reopen and the Sanctions Motion.

6

### III. CREDIBILITY OF WITNESSES

Five people testified at the hearings on the Sanctions Motion: (1) William Ritchey; (2) Reese Baker (counsel for the Debtors); (3) Grady Gordon Nixon (the owner of Ductwork); (4) Patrick Dozark (counsel for Ductwork in the State Court Lawsuit and the Motion to Reopen); and Robert L. Negrin (counsel for Ductwork who defended against the Sanctions Motion). After listening to the testimony, the Court makes the following observations and findings regarding the credibility of these witnesses.

**A.**     **William Ritchey:** He gave credible testimony, and the Court gives substantial weight to his testimony.

**B.**     **Reese Baker:** He gave credible testimony, and the Court gives substantial weight to his testimony.

**C.**     **Grady Gordon Nixon:** He gave credible testimony, and the Court gives substantial weight to his testimony.

**D.**     **Patrick Dozark:** He was responsive to most of the questions posed to him, but was indignant in some of his answers—even to the point of blaming Mr. Baker and the Debtors for his ignorance of the law and poor counseling of Ductwork. At one point, in his testimony, he made the following statement: "Personally, what I feel is that I was hijacked over here, that I filed rightfully in the county court based upon the case law that support my doing that." [January 30, 2014 Tr. 35:18–21]. Dozark made this statement despite never having cited any case law to support his position that Ductwork was entitled to sue the Debtors in state court even though they had already received a discharge. In his testimony, he also complained that he had never received a single phone call from Mr. Baker, but rather that Mr. Baker had simply hauled off and filed pleadings in this Court to reopen the case. [*Id.* at 35:23–24]. Yet, Dozark admitted that he

7

himself had never affirmatively called Mr. Baker to inquire why the Debtors had not scheduled Ductwork. [*Id.* at 36:4–11]. Instead, Dozark hauled off and filed the State Court Lawsuit alleging that the Debtors had committed fraud by deliberately failing to schedule Ductwork as a creditor in their bankruptcy. [Debtors' Ex. No. 1]. Dozark also complained about the short fuse that Gilpin gave to him in responding to the settlement offer made on behalf of the Debtors, but Dozark admitted that he never responded to this settlement offer with a counter-offer, nor did he request an extension of the deadline to respond to the settlement offer. [January 30, 2014 Tr. 42:2–20]. In short, Dozark responded to questions in an effort to lay blame on the Debtors and Mr. Baker rather than to accept any responsibility for poorly communicating with Mr. Baker and also poorly representing Ductwork (by, among other things, wrongly counseling Ductwork that the Discharge Order did not apply to Ductwork simply because the Debtors had failed to schedule Ductwork in their bankruptcy).[6] The Court therefore gives less weight to Dozark's testimony than to the testimony of Mr. Ritchey, Mr. Baker, and Nixon.

**E.     Robert L. Negrin:** He gave credible testimony for the most part. However, his testimony became advocacy at certain points, and therefore must be discounted to a certain extent. For example, he testified that Mr. Baker failed to adhere to the Texas Lawyers Creed by filing the Brief when this Court had not expressly requested the Brief. The Court has reviewed the Texas Lawyers Creed and finds nothing contained therein expressly stating, or even suggesting, that filing a brief without an express request from the Court is violative of the Creed. Further, in the Bibliography of Legal Authorities that Mr. Negrin filed on behalf of Ductwork on March 16, 2014, he cited authority relating to intentional design or fraud in failing to list a debt and the appropriateness of the state court in determining whether a debt is discharged [Doc. No. 54, pp. 1–2]—even though this Court, approximately nine months ago, had already concluded

---

[6] *See* Memorandum Opinion on Debtors' Motion to Reopen their Chapter 7 Case, Doc. No. 30, p. 12.

8

that the Debtors' failure to list Ductwork on their Schedules was inadvertent and that the Note was discharged [Finding of Fact No. 16]. Thus, Mr. Negrin was apparently re-attempting to retry an issue that this Court had already decided after giving Ductwork (at the May 2, 2013 hearing) an opportunity to adduce testimony and introduce exhibits that the Debtors had deliberately failed to schedule Ductwork as a creditor in their Chapter 7 case. If anyone is violating the Texas Lawyers Creed, it is Mr. Negrin for arguing an issue that this Court has already decided and which Ductwork did not appeal.[7] Under these circumstances, while this Court gives some weight to Mr. Negrin's testimony, it gives more weight to the testimony of Mr. Ritchey, Mr. Baker, and Nixon.

## IV. CONCLUSIONS OF LAW

**A.    Jurisdiction, Venue, and Constitutional Authority to Sign a Final Order**

      1.    Jurisdiction

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This matter is also a core proceeding because it concerns this Court's enforcement of its own order—i.e., the Discharge Order. *See, e.g., In re Kewanee Boiler Corp.*, 270 B.R. 912, 917 (Bankr. N.D. Ill. 2002) ("[B]ankruptcy courts have core jurisdiction to interpret and enforce their orders."). This particular dispute is also a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because it is a matter that affects the relationship between the Debtors and a creditor—i.e., Ductwork. *See* 4 *Collier on Bankruptcy*, ¶ 524.02[2][c] at 524-27 (16th ed. 2013) ("A proceeding to enforce the discharge injunction is a core proceeding under section 157(b)(2)(O) of title . . . ."). Finally, this dispute is core under the general "catch-all" language of 28 U.S.C. § 157(b)(2) because the dispute would not arise but for the existence of the bankruptcy case. *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir.

---

[7] The Texas Lawyers Creed sets forth that a lawyer "will respect the rulings of the Court."

1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

    2.    <u>Venue</u>

Venue is proper pursuant to 28 U.S.C. § 1408(1).

    3.    <u>Constitutional Authority to Enter a Final Order</u>

Having concluded that this Court has jurisdiction over this contested matter, the Court nevertheless notes that *Stern v. Marshall*, 131 S. Ct. 2594 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. This Court must therefore determine whether it has constitutional authority to enter a final order in the dispute at bar. The Court concludes that it does for the following reasons.

First, the facts in the dispute at bar are easily distinguishable from those in *Stern*. In *Stern*, the debtor filed a counterclaim against a creditor who had filed a proof of claim. The debtor's counterclaim was based solely on state law; there was no Code provision expressly providing a basis for the counterclaim. Moreover, the resolution of the counterclaim was not necessary to adjudicate the validity of the claim of the creditor. Under these circumstances, the Supreme Court held that the bankruptcy court lacked constitutional authority to enter a final judgment on the debtor's counterclaim. In the dispute at bar, on the other hand, there is no state law involved. The Sanctions Motion is based upon an express provision of the Code: § 524(a). Thus, this dispute is easily distinguishable from the suit in *Stern*, and the Court concludes that there is no *Stern* concern here.

Second, the Court has the power to issue an order holding a party in contempt of its prior order. The Court's authority to do so comes from § 105(a) and applicable case law on policing

the conduct of those who appear in this Court and imposing sanctions on those who misbehave. *See Chambers v. NASCO*, 501 U.S. 32 (1991); *Knight v. Luedtke (In re Yorkshire, LLC)*, 540 F.3d 328, 332 (5th Cir. 2008). Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). *Stern* does not limit this Court's constitutional authority to enter a final order enforcing the Court's own prior order—including the Discharge Order. *See, e.g., In re CD Liquidation Co., LLC*, 462 B.R. 124, 136 (Bankr. D. Del. 2011) (finding that *Stern* did not prevent a bankruptcy court from enforcing its own order). Because the Sanctions Motion arose as a direct result of a violation of an order issued by this Court—i.e., the Discharge Order—the Court is constitutionally permitted to issue a final order on this matter.

For all of these reasons, this Court has the constitutional authority to enter a final order on the Sanctions Motion.

## B.   Ductwork Violated the Discharge Order by Filing the State Court Petition on March 12, 2013, and is Therefore in Contempt of the Discharge Order

Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2).

The Debtors bear the burden of establishing that: (1) a court order was in effect; (2) the order required (or prohibited) certain conduct by Ductwork; and (3) Ductwork failed to comply with this Court's order. *Smith v. Citimortgage, Inc. (In re Smith)*, Bankr. No. 04–50723, Adv. No. 11–05136, 2012 WL 566246, at *5 (Bankr. W.D. Tex. 2012) (citing *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, Inc.*, 177 F.3d 380, 382 (5th Cir. 1999)). This Court finds that the Debtors have satisfied their burden because: (1) the Discharge Order was in effect at the time Dozark filed the State Court Lawsuit on behalf of Ductwork [Findings of Fact Nos. 5

11

& 6]; (2) the Discharge Order prohibited Ductwork from filing the State Court Petition because the Note was discharged [Finding of Fact No. 15]; and (3) Ductwork failed to comply with the Discharge Order by filing the State Court Petition [Finding of Fact No. 6]. Indeed, there is no question that Ductwork was aware of the Discharge Order. [Findings of Fact Nos. 7 & 8]. In fact, Dozark provided Nixon, the owner of Ductwork, with a copy of the Discharge Order prior to the filing of the State Court Lawsuit. [Finding of Fact No. 7]. Despite Dozark's knowledge of the Discharge Order, he advised Nixon that Ductwork was entitled to initiate the State Court Lawsuit. [*Id.*]. Therefore, this Court finds that Ductwork willfully violated the Discharge Order.

"[C]ompensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction." *In re Sandburg Fin. Corp.*, 446 B.R. 793, 803 (Bankr. S.D. Tex. 2011) (quoting *Eastman v. Baker Recovery Servs. (In re Eastman)*, 419 B.R. 711, 725 (Bankr. W.D. Tex. 2009)). A creditor willfully violates a discharge injunction if it: (1) knows the injunction has been entered; and (2) intends the actions that violate it. *Id.* "In fact, what is relevant is *not* the intent to violate the discharge, but rather the intent to commit *the act* that violates the discharge injunction." *Mahoney v. Wash. Mut., Inc. (In re Mahoney)*, 368 B.R. 579, 587 (Bankr. W.D. Tex. 2007); *see also Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1390 (11th Cir. 1996) (finding that a defendant is in contempt if he knew of the discharge and intended the action violating the discharge). Here, there is no question that Ductwork, through its attorney, Dozark, intended to file the State Court Petition.

At the hearing on the Sanctions Motion, Nixon testified that if he had known that the Note was discharged, he would not have authorized Dozark to file the State Court Petition. [January 28, 2014 Tr. 71:25–72:4]. Dozark also testified that Ductwork did not intend to harm

Mr. Ritchey by initiating the State Court Lawsuit. [January 30, 2014 Tr. at 29:14–20]. However, this testimony is irrelevant; what is relevant is that Ductwork intended to file the State Court Petition. *See Garcia v. N. Star Capital Acquisition, LLC (In re Garcia)*, Bankr. No. 09–54517, Adv. No. 11–05149, 2013 WL 414177, at *6 (Bankr. W.D. Tex. Feb. 1, 2013) ("Subjective beliefs or the intent of the creditor are irrelevant to whether the violation of discharge injunction was 'willful.'") (citing *In re Thompson*, 456 B.R. 121, 137 (Bankr. M.D. Fla. 2010)); *Pague v. Harshman (In re Pague)*, Bankr. No. 3:01–bk–32061, Adv. No. 3:09–ap–00071, 2010 WL 1416120, at *3 (Bankr. N.D.W. Va. Apr. 5, 2010) ("[T]he state of mind of the party at the time the party violates the court's order is irrelevant as to a finding of contempt.").

In closing arguments at the hearing on the Sanctions Motion, counsel for Ductwork argued that Ductwork relied upon Dozark in pursuing the State Court Lawsuit; and that therefore, Ductwork should not suffer the consequences of its attorney's errors. [February 4, 2014 Tr. 14:2–9 & 15:3–11]. However, it is well-established that "clients must be accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962) (noting that the mistakes of counsel, who is the legal agent of the client, are chargeable to the client); *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 289 (5th Cir. 1985) ("While we are sympathetic to the plight of a client prejudiced by his attorney's inadvertence or negligence, the proper recourse for the aggrieved client, as the Supreme Court noted in *Link,* is to seek malpractice damages from the attorney."). Thus, Ductwork cannot escape liability by shifting the blame to its attorney, Dozark.

For his part, Dozark testified that although he was aware of the Discharge Order, he is not a bankruptcy attorney and was unaware of the effect of the discharge. [January 28, 2014 Tr.

28:4–14 & 29:10–13]. This testimony will not save his client, Ductwork: there is no affirmative

defense of bona fide error for violation of discharge injunction actions. *In re Garcia*, 2013 WL

414177, at *6; *McCool v. Beneficial (In re McCool)*, 446 B.R. 819, 823 (Bankr. N.D. Ohio 2010)

("[A] willful violation of the automatic stay may still exist even though the creditor believed in

good faith that its actions were lawful."); *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 187

(Bankr. E.D. Va. 2000) ("In a civil contempt proceeding, the state of mind with which the

contemnor violated a court order is irrelevant and therefore good faith, or the absence of an

intent to violate the order, is no defense.") (citing *McComb v. Jacksonville Paper Co.*, 336 U.S.

187, 191 (1949)).

  Under all of the circumstances set forth above, this Court finds that Ductwork willfully

violated the Discharge Order by filing the State Court Petition on March 12, 2013, and is

therefore liable to the Debtors for damages that they have incurred due to this violation.

**C. Availability of Relief Under the Code**

  1. This Court is Authorized to Invoke § 105 to Enforce § 524 and Order the Payment of Actual Damages, Reasonable and Necessary Attorneys' Fees, and Punitive Sanctions for Ductwork's Violation of the Discharge Order

  In the Sanctions Motion, the Debtors request actual damages, injunctive relief, punitive

sanctions, and attorneys' fees and costs for violation of the Discharge Order. [Finding of Fact

No. 19]. Ductwork argues that this Court does not have jurisdiction to grant the requested relief

because "§ 524 does not create a private right of action; the proper remedy for a § 524 violation

is contempt." [Doc. No. 36, pp. 1–2, ¶¶ 1–4]. This Court disagrees. Although § 524 does not

contain a specific remedy provision, the Fifth Circuit has held that § 105(a) authorizes

bankruptcy courts to enter orders to enforce the discharge injunction imposed by § 524. *See*

*Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 n.1 (5th Cir. 2008); *Placid*

*Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d

609, 613 (5th Cir. 1997) ("Reading [§ 105(a)] under its plain meaning, we conclude that a

bankruptcy court can issue <u>any order</u>, including a civil contempt order, necessary or appropriate

to carry out the provisions of the bankruptcy code.") (emphasis added).

In the dispute at bar, the Debtors do not ask the Court to imply a private right of action

under § 524. Rather, the Debtors request relief arising from both this Court's inherent authority

and this Court's authority to issue orders necessary to effectuate the purposes of the Code

provided by § 105(a). [Doc. No. 34, p. 5, ¶ 26(2)]. "The Court need not create an implied

private right of actions to remedy such violations. Congress created a remedy through § 105(a).

Precedent leaves no question that this Court may remedy such violations through its inherent

contempt authority and statutory authority under § 105." *Rodriguez v. Countrywide Home*

*Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 460 (Bankr. S.D. Tex. 2008). Indeed, when

creditors have violated § 524, many courts have used their contempt power to order the payment

of actual damages, including attorneys' fees and punitive damages. *See Hardy v. United States*

*(In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996) ("While it is true that § 524 does not

specifically authorize monetary relief, the modern trend is for courts to award actual damages for

violation of § 524 based on the inherent contempt power of the court."); *McClure v. Bank of*

*America (In re McClure)*, 420 B.R. 655 (Bankr. N.D. Tex. 2009) (awarding the debtors actual

damages for the time and effort they spent prosecuting their claims, reasonable and necessary

fees and expenses, and punitive damages for a violation of § 524); *Malone v. Norwest Fin. Cal.,*

*Inc.*, 245 B.R. 389, 398 (E.D. Cal. 2000) ("Because § 105 provides for all appropriate judgments,

and there appears no reason to limit the implied right under § 524, I conclude that plaintiffs may

seek 'any available remedy.'").

2.    Contrary to Ductwork's Assertion, the Debtors Properly Filed the Sanctions Motion

Ductwork also argues that the Debtors are not entitled to the requested relief because they should have filed an adversary proceeding. [Doc. No. 36, p. 2, ¶ 3]. This argument is not persuasive.   Indeed, a motion for contempt is the traditional method to pursue discharge violations. *See, e.g., Otero v. Green Tree Servicing (In re Otero)*, 498 B.R. 313, 320 (Bankr. D.N.M. 2013); *Bowen v. Mountain Commerce Bank (In re Bowen)*, Bankr. No. 01–22901, Adv. No. 09–5092, 2010 WL 2430777, at *3 n.1 (Bankr. E.D. Tenn. June 11, 2010).   However, because "neither the Bankruptcy Code or Rules mandates it," some courts have permitted a debtor to proceed by adversary proceeding. *In re Montano*, 398 B.R. 47, 55–56 (Bankr. D.N.M. 2008) (quoting *Wagner v. Piper Indus., Inc. (In re Wagner)*, 87 B.R. 612, 619 (Bankr. C.D. Cal. 1988)).   But, this does not mean that filing a motion is inappropriate.   Therefore, the Court finds that the Debtors properly filed the Sanctions Motion.

In sum, this Court concludes that it is authorized to invoke § 105(a) and its inherent power to enforce § 524 and order Ductwork to pay damages to the Debtors if the merits so warrant.

**D.    As Sanctions for Ductwork's Violation of the Discharge Order, the Debtors are Entitled to Recover Certain Actual Damages, but not Damages for a Lost Vacation, Emotional Distress Damages or Punitive Damages**

Because Ductwork violated the Discharge Order by filing the State Court Petition, the Debtors are entitled to recover their actual damages, including attorneys' fees, incurred as a result of Ductwork's violation.   "In order to ensure that debtors are not hesitant to prosecute violations of the discharge injunction, they should be awarded actual damages to compensate them for the time and effort they expend in the process." *McClure v. Bank of America (In re McClure)*, 420 B.R. 655, 664 (Bankr. N.D. Tex. 2009); *Curtis v. LaSalle Nat'l Bank (In re*

*Curtis)*, 322 B.R. 470, 483 (Bankr. D. Mass. 2005) ("[T]he automatic stay and discharge injunction must be enforced to provide any meaningful protection or incentive.").

1.   The Debtors are Entitled to Recover their Lost Wages and Expenses Incurred in
     Dealing with the State Court Lawsuit, Filing and Prosecuting the Motion to
     Reopen, and Filing and Prosecuting the Sanctions Motion

As a result of Ductwork's violation of the Discharge Order, Mr. Ritchey testified that he missed five days of work, and that Donna M. Ritchey (Ms. Ritchey) missed three days of work, in order to attend hearings in this Court. [January 28, 2014 Tr. 10:8–13 & 11:5–16]. The Debtors are seeking a total of $1,308.00 for lost wages.[8]   The Debtors are entitled to compensation for the lost wages they incurred. *See, e.g., In re Meyers*, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006) (finding that the debtor was entitled to compensation for lost wages); *Chambers v. Greenpoint Credit (In re Chambers)*, 324 B.R. 326 (Bankr. N.D. Ohio 2005) (awarding lost wages, among other things, to the debtor that he incurred as a result of the creditor's violation of the discharge injunction). The Debtors also seek reimbursement for traveling to the Baker Firm to meet with their counsel regarding this dispute, traveling to the courthouse to attend hearings, and parking at the courthouse. The total amount that the Debtors request for travel and parking expenses is $209.50.[9]

The Court finds that the amounts requested by the Debtors should be granted, with one exception. The hearing on the Sanctions Motion was initially scheduled for January 7, 2014.

---

[8] Mr. Ritchey credibly testified that he is employed at Oreck Vacuums, and his salary is $13.50 per hour. [January 28, 2014 Tr. 10:17–22]. Therefore, his lost wages for five days is $540.00 (i.e., $13.50 x 8 hours x 5 days). [*Id.* at 10:23–11:4 & 12:24–13:3]. Mr. Ritchey also credibly testified that Ms. Ritchey is employed at Hewlett Packard, and her salary is $32.00 an hour. [*Id.* at 11:5–13]. Therefore, Ms. Ritchey's lost wages for three days is $768.00 (i.e., $32.00 x 8 hours x 3 days). [*Id.* at 11:14–16 & 13:4–8]. The sum of $540.00 plus $768.00 equals $1,308.00.

[9] This sum encompasses $50.00 for parking during Mr. Ritchey's five visits to the courthouse, mileage for driving to and from the courthouse, and mileage for the trip to the Baker Firm. Mr. Ritchey credibly testified that parking was approximately $10.00 a day, he drove 50 miles roundtrip to the Baker Firm, and a roundtrip to the courthouse was 48 miles. [January 28, 2014 Tr. 13:9–23 & 15:19–22]. Mr. Ritchey traveled a total of 240 miles to attend the hearings at the courthouse (i.e., 48 miles x 5 trips). Therefore, Mr. Ritchey drove a total of 290 miles (50 miles for one trip to the Baker Firm + 240 miles for the five trips to the courthouse). $0.55 x 290 miles = $159.50. This figure, when added to the sum of $50.00 for parking, equals $209.50.

However, on the evening of January 6, 2014, Mr. Baker filed a motion for continuance because Gilpin's son and wife, who was pregnant at the time, became ill with the flu, and Gilpin therefore could not appear to testify on the morning of January 7, 2014 (Ductwork's counsel had subpoenaed Gilpin for the hearing). [Doc. No. 44]. The Court did not actually review the motion for continuance until the morning of January 7, 2014, at which time the Court granted the motion and continued the hearing until January 28, 2014. [Doc. No. 45]. Unfortunately, Mr. Ritchey came to the courthouse on the morning of January 7, 2014, believing that the hearing would be held as scheduled. Mr. Baker should have informed him the previous evening that given the poor health of Gilpin's wife and son, it was highly likely that this Court would grant the continuance and that therefore Mr. Ritchey should not come to court on the morning of January 7, 2014. Apparently, Mr. Baker did not do so. The Court finds that Ductwork should not have to reimburse Mr. Ritchey for his lost wages, and travel and parking expenses relating to January 7, 2014, as Mr. Baker should have instructed Mr. Ritchey not to come to court on that day. Accordingly, the total amount of lost wages, and travel and parking expenses for which Ductwork is liable as to Mr. Ritchey will be for 4 days, not 5 days.

Thus, the total amount of lost wages for which Ductwork is liable is calculated as follows: the sum of Mr. Ritchey's lost wages for four days is $432.00 (i.e., $13.50 x 8 hours x 4 days = $432.00) and the sum of Ms. Ritchey's lost wages for three days is $768.00 (i.e., $32.00 x 8 hours x 3 days = $768.00)—resulting in a total of $1,200.00 (i.e., $432.00 + $768.00) in lost wages. Further, the total amount of travel and parking expenses for which Ductwork is liable is calculated as follows: the sum of parking for 4 days is $40.00 (i.e., $10.00 x 4 days = $40.00), the total mileage for one roundtrip to the Baker Firm is: $27.50 (i.e., 50 miles x $0.55 = $27.50), and the total mileage for four roundtrips to the courthouse is $105.60 (i.e., 48 miles x $0.55 x 4 =

18

$105.60)—resulting in a total of $173.10 (i.e., $40.00 + $27.50 + $105.60) in travel and parking expenses.

In sum, because Ductwork violated the Discharge Order, the Court finds that Ductwork must pay a total of $1,373.10 to the Debtors for their lost wages, and their travel and parking expenses (i.e., $1,200.00 in lost wages + $173.10 in travel and parking expenses).

        2.       The Debtors are not Entitled to Recover Damages Relating to the Family Vacation that They Missed

The Debtors also argue that Ductwork should also pay them $1,250.00 for the family vacation they missed last summer, which they claim they had to forego as a result of the violation of the Discharge Order. [January 28, 2014 Tr. 14:3–22]. Mr. Ritchey testified that their financial situation was also a factor in their decision to forego the family vacation. [*Id.* at 20:21–21:3]. The Debtors had not purchased plane tickets because they were planning to drive to Kentucky and stay at Mr. Ritchey's uncle's cabin. [*Id.* at 20:18–20 & 24:21–25:6]. Because the Debtors failed to produce any evidence of actual damages in the amount of $1,250.00, the Court concludes that the Debtors are not entitled to $1,250.00 for the missed family vacation.

        3.       The Debtors are not Entitled to Recover Emotional Distress Damages and Punitive Damages

In the Sanctions Motion, the Debtors allege that "they have suffered severe stress and emotion[al] consequences, including loss [of] sleep, nervousness, anxiety, and depression, from the numerous attempts by [Ductwork] to collect [the Note]." [Doc. No. 34, p. 4, ¶ 21]. "Those courts which have granted damages for emotional distress as a contempt remedy have found that a Debtor's own testimony is sufficient and that medical testimony is not necessary." *In re Meyers*, 344 B.R. 61, 67 (Bankr. E.D. Pa. 2006). However, at the hearing on the Sanctions Motion, the Debtors introduced no evidence about their alleged emotional distress. Therefore,

the Court finds that the Debtors have not met their burden of proof and are not entitled to compensation for emotional distress. *See, e.g.*, *In re McClure*, 420 B.R. 655, 663–64 (Bankr. N.D. Tex. 2009) (declining to award compensation for emotional distress when the testimony given by the debtors did not establish that their emotional distress was caused by the creditor's actions).

The Debtors also seek $4,017.50 for punitive damages. [January 28, 2014 Tr. 17:19–21]. "[T]o recover punitive damages for violating the post-discharge injunction, the debtor must demonstrate 'malevolent intent' on the part of the violator. It is not sufficient to merely show that the actions were deliberate." *Walker v. M & M Dodge, Inc. (In re Walker)*, 180 B.R. 834, 849 (Bankr. W.D. La. 1995) (citations omitted). Although Ductwork willfully filed the State Court Petition and violated the Discharge Order, the Court finds that the Debtors have failed to demonstrate that Ductwork acted with malevolent intent. *See Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 190 (Bankr. E.D. Va. 2000) (finding it inappropriate to award punitive damages because "while the willfulness of the violation of the discharge injunction here is self-evident, the evidence does not suggest [that the creditor's] conduct was egregious or motivated by any malevolent intent"); *In re Walker*, 180 B.R. at 849 ("[T]o recover punitive damages for violating the post-discharge injunction, the debtor must demonstrate 'malevolent' intent on the part of the violator."). Indeed, Dozark testified that Ductwork did not intend to harm Mr. Ritchey by initiating the State Court Lawsuit. [January 30, 2014 Tr. 29:14–20]. And, the Debtors did not controvert his testimony on this point. Accordingly, the Debtors cannot recover punitive damages for Ductwork's violation of the Discharge Order because they have failed to demonstrate malevolent intent.

20

4.    The Debtors are Entitled to Recover a Portion of the Fees and Expenses Set Forth
      in the Baker Firm's Invoice as Sanctions Against Ductwork and Dozark

In the dispute at bar, the Debtors seek attorneys' fees and expenses of $21,684.34.

[Debtors' Ex. No. 6, p. 10]. Because Ductwork violated the Discharge Order, the Debtors are

entitled to recover their reasonable attorneys' fees and expenses incurred in dealing the State

Court Lawsuit, filing and prosecuting the Motion to Reopen, and filing and prosecuting the

Sanctions Motion. For the reasons set forth below, the Court finds that the Debtors are entitled

to recover a portion of the requested fees and expenses.

### a.    Whether the Baker Firm's Fees are Reasonable

The Fifth Circuit employs the "lodestar" method to determine what constitutes reasonable

attorneys' fees both within and outside of the bankruptcy context, including determinations of

sanctions awards. *In re Cahill*, 428 F.3d 536, 539–40 (5th Cir. 2005) (affirming the bankruptcy

court's application of the lodestar method in determining a reasonable fee award for Chapter 13

debtors' attorneys); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008) (vacating

and remanding a fee award in a class action to recover for racial discrimination in the workplace

because the district court failed to conduct the proper "lodestar-fee and *Johnson* analyses");

*Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568–69 (5th Cir. 2006) (affirming the district

court's application of the lodestar analysis to determine the amount of reasonable attorneys' fees

to award as sanctions). Courts compute the lodestar fee by multiplying the number of hours an

attorney would reasonably spend for the same type of work by the prevailing hourly rate in the

community. *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *In re Cahill*, 428 F.3d at 540. Courts

may then adjust the lodestar up or down based on its consideration of the *Johnson* factors that are

not subsumed within the initial calculation of hours reasonably expended at a reasonable hourly

rate. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

21

The Supreme Court has emphasized the importance of the "lodestar" approach in calculating the reasonableness of attorneys' fees, noting that because the method is readily administrable and objective, it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v. Kenny*, 559 U.S. 542, 552 (2010). While bankruptcy courts have considerable discretion in determining the amount of a fee award, they must explain the weight given to each factor considered. *In re Cahill*, 428 F.3d at 540 (citations omitted).

### i. Lodestar Fee - Hours Reasonably Expended

As noted above, this Court must first determine the number of compensable hours in the fee statement, including only those hours reasonably expended by the Debtors' attorneys. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ."); *League of United Latin Am. Citizens # 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) (noting that any hours not reasonably expended, excessive, or duplicative should be excluded from consideration). The burden is on the party seeking payment of his or her attorneys' fees to show that the hours requested are reasonable. *Hensley*, 461 U.S. at 437; *Firth v. Don McGill of W. Houston, Ltd.*, No. Civ.A. H-04-0659, 2006 WL 846377, at *4 (S.D. Tex. Mar. 28, 2006), *aff'd sub nom. Firth v. McGill*, 233 F. App'x 346 (5th Cir. 2007). The evidence presented must be sufficient to prove that this burden is met; indeed, an award of fewer hours may be appropriate "if the documentation is *vague* or *incomplete*." *Id.* (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)).

In the suit at bar, the Baker Firm's Invoice indicates that three attorneys—Mr. Baker, Gilpin, and Regina Sanchez—plus five paralegals—Melanie Bolls, Tammy Chandler, Vinette Ellis, Phillip Murrell and Tiffany Peters[10]—billed the Debtors for their professional services. These services relate to the prosecution of the Motion to Reopen and the Sanctions Motion. The Baker Firm charged the Debtors a total of $21,684.34 for the time period of March 12, 2013 to January 3, 2014. This sum encompasses $20,799.50 for 70.1 hours of work by the professionals and $884.84 in expenses, including copies, filing fees, parking, mailouts, supplies, and research. At the hearing on the Sanctions Motion on January 28, 2014, Mr. Baker requested an additional $1,600.00 in attorneys' fees that are not reflected on the Baker Firm's Invoice—2 hours for Gilpin for preparing and filing responses to Ductwork's production request ($350.00 hourly rate), and 2 hours for Mr. Baker for attending the hearing. [January 28, 2014 Tr. 35:8–19 & 35:24–36:5]. Therefore, the Debtors are requesting a total of $23,284.34 for attorneys' fees and expenses [*Id.* at 37:12–16]—$22,399.50 for 74.1 hours of work by the professionals and $884.84 in expenses.

The Court finds that none of the time entries on the Baker Firm's Invoice are duplicative or redundant nor do any of the entries contain services rendered in an improper time period. However, three of the time entries are vague, incomplete, or otherwise do not contain sufficient detail for this Court to evaluate the nature of the services provided. On January 3, 2014, Mr. Baker billed 5.0 hours, Melanie Bolls billed 3.0 hours, and Gilpin billed 3.0 hours for "Contested matters – Estimated time to complete." [Debtors' Ex. No. 6, p. 10]. Such vague, incomplete, or otherwise indecipherable time entries will be excluded from this Court's consideration of the

---

[10] Tiffany Peters was not listed on the Baker Firm's Fee/Rate Schedule in the Engagement Letter. However, because her rate is $110.00 per hour, there is little doubt that she is a paralegal, not an attorney.

hours reasonably expended by the Baker Firm.[11]  *See, e.g., Firth,* 2006 WL 846377, at *4 ("A

court may determine that an award of less hours is appropriate 'if the documentation is *vague* or

*incomplete.'*") (quoting *La. Power & Light Co.*, 50 F.3d at 324). It may well be that these entries

refer to the time that Mr. Baker estimated he and others at his firm would be spending in the

future prosecuting the Sanctions Motion.  However, Mr. Baker testified on January 28, 2014, and

by this date he could have—and should have—updated his invoice to set forth just exactly how

much time he, and others at his firm, had spent between January 3, 2014 and January 28, 2014

prosecuting the Sanctions Motion, with specific descriptions of the types of services rendered

(such as preparing to give testimony or to give closing argument).  This, he failed to do, and this

Court should not now reward his lack of diligence by granting him fees for estimated services

that are vague.

Counsel for Ductwork argues that the time entries relating to the Brief and the

Supplement to the Brief that the Baker Firm filed in support of the Motion to Reopen [Finding of

Fact No. 15] should be excluded because the Court did not require briefing and supplemental

briefing. [January 30, 2014 Tr. 19:20–20:2]. This Court disagrees.  The Baker Firm was entitled

to file the Brief and Supplement; indeed, the Brief and the Supplement did a good job of

educating the undersigned judge on the factual background of the matter and did a very fine job

of providing ample case law, including an opinion from retired Southern District of Texas

Bankruptcy Judge Wesley W. Steen, that assisted the undersigned judge in rendering a decision

to grant the Motion to Reopen.  Therefore, this Court will not exclude the time entries relating to

the Brief and the Supplement.

Counsel for Ductwork also argues that the time entries on the Baker Firm's Invoice that

describe communication with Ms. Ritchey, but not Mr. Ritchey, should be excluded because

---

[11] Attached hereto is a chart labeled **Exhibit A.**  This chart sets forth the vague entries.

24

only Mr. Ritchey was sued in the State Court Lawsuit. [January 30, 2014 Tr. 11:4–10, 12:24–13:3, 16:23–17:2 & 19:6–19]. This Court disagrees. Although Mr. Ritchey was the sole defendant in the State Court Lawsuit [Finding of Fact No. 6], the amount owed under the Note is a community debt. *See, e.g., In re Wolfe*, 51 B.R. 900, 903 (Bankr. W.D. Tex. 1985) ("There is a presumption under Texas law that property possessed by either spouse, during marriage, is community property."). Because Ductwork did not introduce evidence to rebut the presumption that the Note is a community debt, the professionals at the Baker Firm were justified in communicating with Ms. Ritchey, as she would also have been liable on the Note had it not been discharged. *See id.* at 903–04 (holding that the creditor could enforce its lien against the wife co-debtor even though the promissory note and security agreement were only executed by the husband co-debtor because there was no evidence to overcome the presumption that it was a community debt).

Even if she had not been liable, the professionals at the Baker Firm were justified in communicating with her because she is one of the Debtors and is the wife of Mr. Ritchey, and it may simply have been that it was easier for the professionals at the Baker Firm to communicate their thoughts to her because she was available at the time and Mr. Ritchey was not—with the Baker Firm knowing full well that Ms. Ritchey would convey its thoughts to her husband.

Further, in his closing argument, counsel for Ductwork (Mr. Negrin) argued that Mr. Baker, instead of filing the Motion to Reopen and the Sanctions Motion, should have simply filed an answer to the State Court Petition. [February 4, 2014 Tr. 19:24–20:23]. Mr. Negrin's argument is that by filing an answer, the Debtors would have incurred substantially fewer attorneys' fees; and that therefore all of the fees incurred relating to the Motion to Reopen and the Sanctions Motion are unreasonable. The Court rejects this argument. Mr. Baker could

25

certainly have filed an answer in the State Court Lawsuit, but it was legitimate trial strategy for him to not do so, but rather file the Motion to Reopen so that he could litigate any issues over the violation of the Discharge Order in this Court rather than in the State Court Lawsuit. Indeed, during his closing argument, Mr. Baker stated that he did not file an answer "because I'm not going to subject myself to malpractice." [*Id.* at 31:21–22]. In other words, Mr. Baker feels more comfortable practicing in bankruptcy court than he does in state court. And, given his extensive experience in bankruptcy court and the fact that the undersigned judge is much more familiar with this Chapter 7 case than the state court judge adjudicating the State Court Lawsuit, Mr. Baker's choice of seeking to reopen the Debtors' Chapter 7 case in order to try any issues concerning the violation of the Discharge Order makes eminently good sense. His duty is to zealously represent his clients, and in this dispute, he believed that trying the issue of the violation of the Discharge Order was more appropriate in this Court. Accordingly, this Court finds that the services rendered by the Baker Firm in this Court are not unreasonable simply because Mr. Baker could have filed an answer in the State Court Lawsuit and litigated the issues in that forum. To the contrary: this Court finds that Mr. Baker's decision to litigate any issues for the violation of the Discharge Order in this Court was reasonable.

Counsel for Ductwork also argued in closing that this Court should not approve any of the Baker Firm's fees because "it is inherently improper for a Debtor or their attorney to view violations of [§] 524 injunction as a profit-making venture." [February 4, 2014 Tr. 28:6–8]. Counsel for Ductwork apparently contends that Mr. Baker—or, for that matter, any debtor's counsel who seeks to obtain court enforcement of a discharge injunction—should work for free; or, at least, should not be paid by the law-breaking creditor. The Court finds such a position to be unreasonable. Innocent debtors will be inhibited in retaining their former counsel to remedy

the violation of a discharge injunction if that attorney has to inform them that they—not the law-breaking creditor—will have to pay all of his fees to right the wrong. Indeed, given that the Debtors had to file a Chapter 7 petition in the first instance, it is doubtful that they have the financial wherewithal to pay all of the fees.

Counsel's "profit-making" comment also seems to suggest that Mr. Baker deliberately ran up fees. Ductwork's counsel seems to believe that Mr. Baker did not need to file the Motion to Reopen or the Sanctions Motion. This Court has already found that Mr. Baker's trial strategy was reasonable. Ductwork had every opportunity to bring the dispute to a quick resolution prior to the filing of the Motion to Reopen and the Sanctions Motion. Dozark, counsel for Ductwork, could have stated on the record at the May 2, 2013 hearing on the Motion to Reopen that Ductwork would agree never to seek to collect the Note and would pay the reasonable attorneys' fees that the Debtors had incurred by that point in having Mr. Baker deal with the matter. Dozark did not do so. Then, at the May 28, 2013 hearing, Dozark, once again representing Ductwork, could have made the same commitment. He did not do so. Then, after Dozark received the settlement letter from Gilpin on August 14, 2013—which was prior to the filing of the Sanctions Motion [Finding of Fact No. 18]—Dozark could have accepted the settlement offer, made a counter-settlement offer, or requested an extension of the deadline to respond to the settlement offer. Yet, he chose none of these options, but rather failed to respond entirely. [*Id.*]. To the Debtors, his silence was deafening. They concluded—correctly, in this Court's view—that the only way that they could recover any of their attorneys' fees for having had to retain the Baker Firm was to authorize Mr. Baker to file the Sanctions Motion. Under these circumstances, Mr. Baker cannot be said to have been on a "profit-making venture." To the

extent that his firm has earned fees beyond what Ductwork believes he should earn, Ductwork has only itself—or its chosen attorney, Dozark—to blame.

Finally, counsel for Ductwork argued that this Court should not approve any of the fees because the services rendered by the Baker Firm did not provide an identifiable, tangible, and material benefit to the Debtors' Chapter 7 estate as required by *Andrews & Kurth LLP v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.)*, 157 F.3d 414 (5th Cir. 1998). The Court rejects this argument. The Baker Firm has never represented the Debtors' chapter 7 estate, but rather **the Debtors**. The *Pro-Snax* decision applies to attorneys representing the bankruptcy estate, not the Debtors themselves. Accordingly, this Court concludes that *Pro-Snax* is inapplicable in the dispute at bar.

In sum, after discounting the vague hours/time entries on the Baker Firm's Invoice, the Court concludes that 11.0 hours must be excluded from the 74.1 hours of professional services billed by the Baker Firm. Thus, a total of 63.1 hours will be considered in computing the lodestar fee.

### ii. Lodestar Fee - Reasonable Hourly Rate

Next, the Court must determine an appropriate hourly billing rate by evaluating the prevailing market rate in the relevant legal community. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). "The Court has discretion to determine a reasonable hourly rate and can rely on its own experience and knowledge of customary hourly rates in deciding a reasonable hourly rate." *In re Weaver*, No. 13–10–12204 JA, 2011 WL 867136, at *3 (Bankr. D.N.M. Mar. 11, 2011); *see also In re Recycling Indus., Inc.*, 243 B.R. 396, 404 n.6 (Bankr. D. Colo. 2000) (noting that when there is no evidence of prevailing market rates, the court "in its own discretion, may use other relevant factors, including its own knowledge to establish the rate."). Ductwork

does not complain about the hourly rates of any of the Baker Firm's attorneys or legal assistants with one exception: it asserts that Gilpin's rate of $350.00 per hour is too high. With respect to all of the attorneys and legal assistants at the Baker Firm, except Gilpin, the Court finds that the hourly rates for these professionals set forth in the Baker Firm's Invoice are reasonable.

With respect to Gilpin, the Court agrees with Ductwork's position. Counsel for the Debtors presented minimal evidence that speaks to the reasonableness of Gilpin's hourly rate of $350.00. Rather, Mr. Baker merely testified that Gilpin's father is a well-known constitutional lawyer, Gilpin had a lot of background before he attended law school, and Gilpin is competent. [January 30, 2014 Tr. 5:24–46:11].

On the other hand, counsel for Ductwork argued that Gilpin's rate is unreasonable because Gilpin only has approximately seven years of experience and, unlike Mr. Baker, is not board certified. [*Id.* at 24:4–17]. Further, counsel for Ductwork testified that he has been a licensed attorney since 1987 and his hourly rates range from $150.00 to $250.00. [*Id.* at 9:11–21 & 26:14–16]. The Court notes that another Chapter 13 bankruptcy attorney practicing in the Houston area with approximately eighteen years of experience (Jesse Aguinaga) charges $285.00 per hour. [*See* Case No. 13-37288, Doc. No. 36-4, which is an invoice of Mr. Aguinaga's law firm in a Chapter 13 case]. The Court also notes that another Chapter 13 bankruptcy attorney in the Houston area with approximately twenty-two years of experience (Pamela Franklin) charges $300.00 per hour. [*See* Case No. 13-34321, Doc. No. 35-3, which is an invoice of Ms. Franklin's firm for a Chapter 13 case]. The Court further notes that another Chapter 13 bankruptcy attorney practicing in the Houston area with approximately twenty-four years of experience (Johnie Patterson), who is board certified in consumer bankruptcy law, charges $350.00 per hour. [*See, e.g.*, Case No. 13-30234, Doc. No. 130-1, which is an invoice of Mr.

29

Patterson's law firm in a Chapter 13 case]. Meanwhile, Mr. Patterson's associate, Miriam Goott, who has been practicing approximately twelve years, charges $250.00 per hour. [*Id.*].

Ms. Goott's practice, like Gilpin's practice, is almost entirely in the Chapter 13 and Chapter 7 area. Gilpin's level of experience is therefore more similar to Ms. Goott's level of experience than are the levels of experience of Mr. Aguinaga, Ms. Franklin, or Mr. Patterson. Accordingly, the Court concludes that Gilpin's hourly rate of $350.00 is unreasonable given his years of experience, his lack of board certification, and the prevailing market rates in Houston, Texas; and that therefore Gilpin's rate should be reduced from $350.00 to $250.00 (which is the same hourly rate as Ms. Goott's rate).

In sum, the Court computes the lodestar fee by multiplying the hours reasonably expended on the litigation (i.e., 63.1 hours) by the reasonable hourly rate for each respective professional. This computation results in a total lodestar fee of $16,361.50, as set forth in the chart below.

| Professional | Hours Reasonably Expended | Hourly Rate | Total Fee |
|---|---|---|---|
| Reese Baker | 15.1 hours | $450.00 per hour | $6,795.00 |
| Patrick Joseph Gilpin | 23.8 hours | $250.00 per hour | $5,950.00 |
| Regina Sanchez | 0.6 hours | $225.00 per hour | $135.00 |
| Melanie Bolls | 22.3 hours | $150.00 per hour | $3,345.00 |
| Tammy Chandler | 0.2 hours | $100.00 per hour | $20.00 |
| Vinette Ellis | 0.4 hours | $110.00 per hour | $44.00 |
| Phillip Murrell | 0.3 hours | $95.00 per hour | $28.50 |
| Tiffany Peters | 0.4 hours | $110.00 per hour | $44.00 |
| **Total** | **63.1 hours** | | **$16,361.50** |

*iii. Adjusting the Lodestar Fee*

### a) The *Johnson* Factors

This Court must now determine if an adjustment to the lodestar fee is appropriate—beginning with the *Johnson* factors.[12]   In applying each of the twelve factors, the Court concludes that several of the factors were already subsumed in its calculation of the lodestar fee. First, in evaluating the number of hours the Baker Firm reasonably expended on the litigation, the Court has considered the novelty and difficulty of the questions presented, the time and labor required to complete necessary tasks, and the skill needed to perform the legal services properly. The Court finds that the issues presented do not involve relatively complex questions of law; that prosecution of the Motion to Reopen and the Sanctions Motion necessitated a substantial amount of time and labor; and that a certain level of skill and expertise in bankruptcy law has been required to successfully prosecute the Motion to Reopen and the Sanctions Motion. Additionally, in evaluating the reasonableness of hourly rates billed in the Baker Firm's Invoice, the Court has considered whether the professionals at the Baker Firm charged a customary fee and has also examined the relative experience, reputation, ability of the attorneys involved, and the results obtained.   The Court concludes that it should not adjust the lodestar fee either upwards or downwards based on further consideration of these *Johnson* factors.   *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) ("The lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting.").

---

[12] The *Johnson* factors include the following: (1) time and labor required; (2) novelty and difficulty of the legal questions; (3) skill required to properly perform the legal services; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

Further, the Court concludes that certain *Johnson* factors are irrelevant to an evaluation of the reasonableness of attorneys' fees in this dispute. Indeed, preclusion of other employment due to acceptance of the suit, whether the suit involves a fixed or contingent fee, the time limitations imposed by the client or other circumstances, the "undesirability" of the matter, and the nature or length of the professional relationship with the client are factors which are of little use when deriving or adjusting the lodestar in this particular case. *In re El Paso Refinery, L.P.*, 257 B.R. 809, 826 (Bankr. W.D. Tex. 2000); *In re Temple Ret. Cmty.*, 97 B.R. 333, 341 (Bankr. W.D. Tex. 1989). Typically, preclusion of employment presumes that an attorney does not generally engage in the sort of representation for which fees are being requested and, therefore, is prevented from undertaking a customary amount of additional work due to the increased time demand of that particular case. *See id.* at 826 n.30. While the Court notes that the Baker Firm spent a significant amount of time prosecuting the Sanctions Motion, nothing in the record indicates that the nature of the litigation involved varies drastically from the average bankruptcy-related representation undertaken by the Baker Firm. While the Baker Firm, as a general rule, focuses primarily on obtaining confirmation of Chapter 13 plans or obtaining discharges in Chapter 7 cases for their clients, the firm certainly has experience representing its debtor-clients for violations of the automatic stay and the discharge order. The professionals involved in this litigation may have been precluded from commencing representation of other clients, but such preclusion is simply due to the natural limitations on billable hours since the fees sought by the firm are fixed per hour, rather than on a contingency fee basis.

While the Court notes that litigating the issues presented in the matter at bar could certainly be construed as less than desirable, the relative "undesirability" of a bankruptcy case or related adversary proceeding arguably does not have the same effect as in contingency fee cases.

Accordingly, this Court does not find cause to adjust the Baker Firm's fees based on the "undesirability" of this dispute.

Finally, the length of the professional relationship is typically considered when counsel varies his fee for similar work in light of the professional relationship with a client. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974). However, nothing in the record indicates that the Baker Firm varied its fees for the Debtors in prosecuting the Sanctions Motion; therefore, the Court does not find cause to adjust the Baker Firm's fees based on the length of the professional relationship between it and the Debtors.

Accordingly, after applying the *Johnson* factors, the Court concludes that it should not adjust the lodestar fee of $16,361.50.

### b) Lumping Fee Entries

Courts may consider other factors, in addition to those set forth in *Johnson*, in determining whether to adjust the lodestar fee—such as the lumping of fee entries. *Arnold v. Babbitt*, No. CIV. A. 3:96–CV–3077, 2000 WL 354395, at *7–8 (N.D. Tex. Apr. 6, 2000), *aff'd sub. nom. Arnold v. U.S. Dep't of Interior*, 252 F.3d 435 (5th Cir. 2001). Generally, courts will not award fees for time entries that are lumped together. *In re 900 Corp.*, 327 B.R. 585, 598 (Bankr. N.D. Tex. 2005) ("When time entries are vague or lumped together, such that the Court cannot determine how much time was spent on particular services, then the creditor has not met its burden to show that its fees are reasonable."); *In re Saunders*, 124 B.R. 234, 237 n.1 ("In order for the court to determine whether time spent on an activity was reasonable, multiple

services cannot be 'lumped' together under one time entry."). Indeed, lumping activities on fee statements violates the U.S. Trustee's Fee Guidelines.[13]

Twenty of the billing entries in the Baker Firm's Invoice "lumped" activities in such a manner that the Court is unable to discern how much time was allocated to each activity and the respective value rendered by the particular individual at the Baker Firm performing the service. For example, on April 11, 2013, Gilpin spent 1.4 hours performing three separate tasks: "Contested matters – research regarding unlisted unsecured debt. Review state court petition in preparation for drafting an answer. Draft, amend, and supplement motion to dismiss adversary case in preparation for filing." [Debtors' Ex. No. 6, p. 2]. Similarly, on May 22, 2013, Gilpin billed 3.6 hours for three discrete services, which appear in a single time entry: "Contested matters – Conference with court coordinator regarding deadline to file brief and case law supporting motion to reopen case. Research regarding 350(b) motions to reopen case. Initiate drafting brief in support of motion to reopen case." [Id. at p. 5].

On May 28, 2013, Mr. Baker billed the Debtors 2.9 hours for providing the following services, all of which were set forth in a single time entry: "Contested matters –Prepare for and attend hearing, conf with clients, draft supplement to brief, provide again to court the tabbed binder with brief and attachments, related issues." [Id. at p. 6].

This Court has voiced its disapproval of lumping in prior opinions. See, e.g., In re Energy Partners, Ltd., 422 B.R. 68, 89–92 (Bankr. S.D. Tex. 2009) (citing to the Honorable

---

[13] U.S. DEP'T OF JUSTICE, Guidelines for Reviewing Applications for Compensation (Fee Guidelines), JUSTICE.GOV (Feb. 21, 2013 4:50 PM), http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/feeguide.htm. The U.S. Trustee Guidelines expressly state that:

> Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour. Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; however, tasks performed in a project which total a <u>de minimis</u> amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate.

Barbara J. Houser's 25% reduction due to lumping in *In re 900 Corp.*, 327 B.R. at 598, this

Court concluded that a 25% reduction in the fees requested pursuant to § 503 was appropriate);

*In re Jack Kline Co.*, 440 B.R. 712, 751–53 (Bankr. S.D. Tex. 2010) (reducing the fees of the

Chapter 7 trustee's law firm by 50% due to lumping).    Courts have wide discretion in

determining the appropriate reduction of the amount of approved fees. *See, e.g., In re 900 Corp.*,

327 B.R. at 598; *In re Brous*, 370 B.R. 563, 576–77 (Bankr. S.D.N.Y. 2007); *Beatrice Cheese,*

*Inc. v. Peter J. Schmidt, Inc. (In re Peter J. Schmidt, Inc.)*, 154 B.R. 632, 637–38 (Bankr. D. Del.

1993).    Here, the twenty entries referenced above that are lumped total $6,870.00.[14]    These

lumped fees will not be entirely excluded from the Court's consideration of the reasonable

attorneys' fees awarded to the Debtors.    However, this Court concludes that a 75% reduction is

appropriate because all of the fees were billed well after this Court issued its opinions in *Energy*

*Partners* and *Jack Kline*,[15] and because Mr. Baker is board certified in consumer and business

bankruptcy and therefore is held to a higher standard than an attorney who is not board certified

in bankruptcy. *See In re Cochener*, 360 B.R. 542, 574–75 (Bankr. S.D. Tex. 2007).    Mr. Baker

should be aware of the U.S. Trustee's Fee Guidelines and this Court's two opinions, and should

have already educated all of the other attorneys and legal assistants at the Baker Firm about the

need to avoid lumping.    Thus, the attorneys' fees for the lumped entries are reduced by 75%

---

[14] Attached hereto is a chart labeled **Exhibit B.** This chart sets forth the lumped entries. In calculating the lumped fees, the Court used the reasonable hourly rate of $250.00 for Gilpin.

[15] This Court increased the percentage reduction in *Jack Kline* from the 25% reduction set forth in *Energy Partners* to a 50% reduction because: (1) as an appointee of the United States Trustee, the Chapter 7 trustee should not have been in direct violation of the U.S. Trustee's guidelines forbidding lumping; and (2) many of the fees were billed after this Court issued its opinion in *Energy Partners* and, thus, the trustee should have known that lumping could result in a reduction of fees requested pursuant to § 503. *In re Jack Kline Co.*, 440 B.R. at 753. Other courts have applied a 50% reduction due to lumping without further explanation. *See, e.g., In re New Towne Dev. Grp., LLC*, No. 09–10029, 2010 WL 1451480, at *4–5 (Bankr. M.D. La. Apr. 9, 2010) ("[T]he court further reduces by one-half the fees for other services where the billing entries for those services were lumped."). Here, a 75% reduction is appropriate for the reasons set forth above.

from \$6,870.00 to \$1,717.50. Accordingly, the Court further reduces the lodestar fee from \$16,361.50 to \$11,209.00 (i.e., \$16,361.50 minus \$5,152.50).

### iv. *Whether Expenses are Reasonable*

In addition to the 74.1 hours billed, the Baker Firm's Invoice contains \$884.84 in expenses, including: copies, filing fees, parking, mailouts, supplies, and research. The Court finds that all of the expenses on the Baker Firm's Invoice are reasonable with the exception of one entry: 5/31/2013 Lexis Nexis Research \$35.25 [Debtors' Ex. No. 6, p. 6]. This particular entry is vague, and therefore the Debtors have not met their burden of showing that this expense is reasonable. Accordingly, the Court concludes that \$849.59 of the requested expenses are reasonable and necessary. *See, e.g.*, *Wells Fargo Equip. Fin., Inc. v. Beaver Constr., LLC*, Civil No. 6:10–0386, 2011 WL 5525999, at \*5 (W.D. La. Oct. 18, 2011) (holding that the charges for filing fees, service fees, postage, photocopies, as well as courier fees, and fees for copies of records were reasonable); *In re Seneca Oil Co.*, 65 B.R. 902, 913 (Bankr. W.D. Okla. 1986) (approving actual expenses such as photocopying, postage, and telephone charges).

### V. CONCLUSION

For all the reasons set forth above, the Court finds that Ductwork violated the discharge injunction of § 524(a)(2) and therefore, is in contempt of the Discharge Order. The Court concludes that the Debtors are entitled to recover \$13,431.69—representing \$1,373.10 for actual damages, \$11,209.00 of their requested fees, and \$849.59 of their requested expenses—as a form of sanctions for Ductwork's violation of the Discharge Order. The amount of \$1,373.10 represents the sum of \$1,200.00 for the Debtor's and Ms. Ritchey's lost wages, and \$173.10 for travel and parking expenses. The total amount awarded for reasonable attorneys' fees and expenses—i.e., \$12,058.59—represents the amount of fees and expenses reasonably charged by

the Baker Firm in reopening the Debtors' Chapter 7 case and prosecuting the Sanctions Motion. Ductwork is required to pay the Debtors the sum of $1,373.10 and pay Baker & Associates the sum of $12,058.59 within fourteen days of the entry on the docket of these Findings of Fact and Conclusions of Law.

The Court declines to award any damages for a lost vacation, emotional distress damages or any punitive damages, as the record simply does not support such awards.

An Order consistent with these Findings of Fact and Conclusions of Law will be entered simultaneously herewith.

Signed:   June 24, 2014

Jeff Bohm
Chief United States Bankruptcy Judge

37

## Exhibit A (Vague Entries)

| Date | Professional | Hours | Hourly Rate | Amount | Activity |
|---|---|---|---|---|---|
| 01/03/2014 | Reese Baker | 5.0 | $450.00 | $2,250.00 | Contested matters – Estimated time to complete |
| 01/03/2014 | Melanie Bolls | 3.0 | $150.00 | $450.00 | Contested matters – Estimated time to complete |
| 01/03/2014 | Patrick Joseph Gilpin | 3.0 | $110.00 | $1,050.00 | Contested matters – Estimated time to complete |

**Exhibit B (Lumped Entries)**

| Date | Professional | Hours | Hourly Rate | Amount | Activity |
|---|---|---|---|---|---|
| 04/03/2013 | Patrick Joseph Gilpin | 0.6 | $250.00 | $150.00 | Contested matters – review lawsuit filed against Ritchey in violation of the discharge injunction. Discuss possible adversary representation. |
| 04/05/2013 | Melanie Bolls | 0.6 | $150.00 | $90.00 | Contested matters – Telephone conference and multiple email communication with Donna Ritchey regarding state court case, chapter 7 bankruptcy matters and engagement agreement. Drafted, finalized and email engagement agreement to Donna Ritchey. |
| 04/10/2013 | Patrick Joseph Gilpin | 1.2 | $250.00 | $300.00 | Contested matters – conference with clients regarding status to re-open chapter 7 case and prosecute discharge injunction violations. Initiate research regarding unlisted unsecured creditor issues and chapter 7 discharge. |
| 04/11/2013 | Patrick Joseph Gilpin | 1.4 | $250.00 | $350.00 | Contested matters – research regarding unlisted unsecured debt. Review state court petition in preparation for drafting answer. Draft, amend, and supplement motion to dismiss adversary case in preparation for filing. |
| 04/12/2013 | Melanie Bolls | 0.7 | $150.00 | $105.00 | Contested matters – Drafted Motion to re-open bankruptcy case. Communication regarding action plan, motion to dismiss and related matters |
| 04/15/2013 | Patrick Joseph Gilpin | 1.2 | $250.00 | $300.00 | Contested matters – review, amend, and supplement motion to re-open case in preparation for filing. Review and respond to client correspondence regarding case status. Conference regarding case strategy. Continue to review, amend and supplement motion to dismiss petition in preparation for filing. |
| 04/17/2013 | Melanie Bolls | 0.6 | $150.00 | $90.00 | Contested matters – Communication regarding mailout of the Motion to reopen bankruptcy case to all creditors, filing of the motion to reopen case and related matters. Finalized and filed motion to reopen bankruptcy case and served per certificate of service. |

| Date | Name | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|
| 04/25/2013 | Melanie Bolls | $150.00 | 0.6 | $90.00 | Contested matters – Email communication with Donna Ritchey regarding signature for the certificate of service. Prepared mailing matrix. Finalized and filed Emergency Motion for Rehearing Regarding Debtors' Motion to Reopen Bankruptcy Case. |
| 04/29/2013 | Melanie Bolls | $150.00 | 1.2 | $180.00 | Contested matters – Received case update regarding certificate of notice on the emergency hearing to reopen the case. Prepared mailing matrix. Drafted, finalized, filed and served the notice of hearing. Communication regarding notice of hearing and service. Mailed the notice of hearing to all creditors per certificate of service. |
| 05/01/2013 | Melanie Bolls | $150.00 | 0.6 | $90.00 | Contested matters – Communication regarding hearing on the motion to reopen case, correspondence from counsel for Ductwork, documents for the hearing, correspondence with debtors and case history. Reviewed case file regarding wet signatures on schedules and case files. |
| 05/22/2013 | Patrick Joseph Gilpin | $250.00 | 3.6 | $900.00 | Contested matters – Conference with court coordinator regarding deadline to file brief and case law supporting motion to reopen case. Research regarding 350(b) motions to reopen case. Initiate drafting brief in support of motion to reopen case. |
| 05/22/2013 | Melanie Bolls | $150.00 | 0.6 | $90.00 | Contested matters – Email communication with Donna Ritchey regarding the hearing on the motion to reopen. Prepared appendix to the brief. Communication regarding brief, case citations and appendix. |
| 05/23/2013 | Melanie Bolls | $150.00 | 3.2 | $480.00 | Contested matters – Communication regarding brief, appendix, exhibit and witness list, correspondence with counsel for DuctWork and related matters. Continued preparation of appendix to the brief. Prepared hard copies of brief, exhibit and appendix for submission to court and another copy for the attorney. Drafted, finalized and filed exhibit and witness list. Email communication with counsel for DuctWork forwarding exhibit and witness list and exhibits to the hearing on Tuesday. Prepared 4 exhibit books for the hearing on the motion to reopen case. |

| Date | Name | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|
| 05/24/2013 | Melanie Bolls | 0.7 | $150.00 | $105.00 | Contested matters – Prepared, finalized and filed Brief with all attachments (199 pages). Served filed brief and attachments to counsel for DuctWork via email and fax. Served brief and cover for appendix by regular mail. |
| 05/28/2013 | Reese Baker | 2.9 | $450.00 | $1,305.00 | Contested matters – Prepare for and attend hearing, conf with clients, draft supplement to brief, provide again to court the tabbed binder with brief and attachments, related issues |
| 05/28/2013 | Patrick Joseph Gilpin | 1.4 | $250.00 | $350.00 | Contested matters – research regarding standards used by courts for reopening bankruptcy cases. Review, amend, and supplement the supplemental brief in preparation for filing. |
| 10/03/2013 | Melanie Bolls | 1.3 | $150.00 | $195.00 | Contested matters – Finalized and filed Motion against DuctWorks, Inc. and Patrick Dozark, Motion For Contempt, Motion for Sanctions for Violation of the Discharge Injunction. Email communication with Patrick Dozark forwarding copy of filed Motion against DuctWorks, Inc. and Patrick Dozark , Motion for Contempt, Motion for Sanctions for Violation of the Discharge Injunction. Communication regardin Motion against DuctWorks, Inc. and Patrick Dozark, Motion for Contempt, Motion for Sanctions for Violation of the Discharge Injunction and invoice. Prepared invoice. |
| 11/19/2013 | Reese Baker | 2.3 | $450.00 | $1,035.00 | Prepare for hearing, attend hearing, continued for an hour, review of issues with client, attend continued hearing, continued to January, follow up issues |
| 11/19/2013 | Melanie Bolls | 0.6 | $150.00 | $90.00 | Contested matters – Prepared documents for the hearing on motion for sanctions. Communication regarding hearing on motion for sanctions docket report and CD of the hearing on May 28. Prepared AO346 for the hearing on May 28. |
| 01/02/2014 | Patrick Joseph Gilpin | 2.3 | $250.00 | $575.00 | Contested matters – prepare exhibit and witness lists, books, and review case documents in preparation for hearing on motion for contempt and sanctions. Review subpoena served by opposing party. |

3